# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| FOREST OAKS SHREVEPORT APARTMENTS, LLC | CIVIL ACTION NO. 20-286 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WESTERN WORLD INSURANCE CO. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Now before the Court is a Motion for Summary Judgment, filed by Plaintiff Forest Oaks Shreveport Apartments, LLC ("Plaintiff"). The motion has been fully briefed. For the reasons below, Plaintiff's motion [Record Document 25] is **DENIED**.

## BACKGROUND

This case involves the interpretation of a commercial property insurance policy issued by Defendant Western World Insurance Company ("Defendant"). Plaintiff is the owner and operator of an apartment complex in Shreveport, Louisiana. Record Document 8, ¶ 6. The apartment complex has four buildings with addresses ranging from 1668-1676 David Raines Road (the "David Raines Road Properties"). Record Document 25-8, p. 3. On May 17, 2019, the building with an address of 1670 David Raines Road (the "Building") was significantly damaged by a fire. *See* Record Documents 25-1, p. 8; 25-15, p. 31; 27, p. 9. The parties do not dispute that the appraised cost of the damage was $939,188.33, after accounting for the depreciated cash value and the $25,000 deductible. Record Document 25-11, p. 2. On September 26, 2019, Defendant issued a payment in the amount of $407,000, which Defendant claimed to be the coverage limit for the Building. Record Document 25-12, p. 2. Plaintiff disagreed with Defendant's interpretation of the coverage limit and filed suit on March 5, 2020, to recover $532,188.33, which is the unpaid portion

of the actual adjusted amount of the loss.[1] Record Document 8, ¶ 13. In Plaintiff's complaint, it accuses Defendant of withholding payment arbitrarily, capriciously, and without probable cause and seeks an additional $266,094.16 pursuant to Louisiana Revised Statute § 22:1892. *Id.* ¶¶ 14–15.

The undisputed facts[2] show that in May of 2018, Plaintiff's affiliate, AMG Realty Group, LLC ("AMG"), purchased apartment complexes in Arkansas. AMG had its professional retail insurance agent, Insurance Offices of America ("IOA"), obtain insurance for Plaintiff's properties. IOA contacted a wholesale insurance broker, Peachtree Special Risk Brokers ("Peachtree"), to purchase said insurance. On May 29, 2018, Peachtree contacted Defendant's underwriter, Rob Halsey ("Halsey"), who works for Defendant's general managing agent, Validus Specialty Underwriting Services, Inc., for an insurance quote for AMG's properties. Peachtree also submitted a Schedule of Values ("SOV"),[3] which detailed the values of the properties. On June 21, 2018, the parties executed a primary insurance contract, which covered the properties.

A few months later, AMG acquired more properties, including the David Raines Road Properties. AMG, through IOA and Peachtree, requested that the new properties be added to the existing insurance policy. Peachtree provided an updated SOV, which valued each building at the David Raines Road Properties at $407,000. Record Document 25-8, p. 5. Halsey agreed to the update and added the David Raines Road Properties to the insurance contract.

There is no dispute that the loss of the Building is a covered loss. *See* Record Document 25-16, p. 1. The only dispute is how much money Defendant owes under the policy. *See id.* Defendant

---

[1] $939,188.33 - $407,000.00 = $532,188.33.
[2] The dispute is not over the following facts but instead the interpretation of the policy. *See generally* Record Documents 25-1, 25-16, & 27.
[3] This is also called a Statement of Values. The Court shall use the terms Schedule and Statement interchangeably.

2

contends that the insurance contract is clearly and unambiguously a scheduled policy. Record Document 27, p. 1. As such, Defendant argues that its limit of liability is the value of the property as listed on the SOV on file with the company: $407,000. *Id.*

Plaintiff counters that when reading the contract, there is no language that expressly and unambiguously limits the coverage to the value listed on the SOV. Record Document 25-1, p. 5. Plaintiff contends that the only limit of liability within the four corners of the contract is the $5,000,000 limit of liability primary per occurrence. *Id.* Plaintiff argues that it is clear from the insurance contract that the SOV merely provides a description of the property and does not limit any liability. *Id.* As such, Plaintiff states that it is entitled to judgment as a matter of law based on the unambiguous language of the insurance contract for the full amount of the undisputed loss, minus depreciation costs and the deductible. Alternatively, Plaintiff avers that if there is a limit of liability according to the SOV, then it is $1,628,000, which is the aggregate value of the four separately listed buildings at the Forest Oaks Shreveport Apartments on David Raines Road.[4] Record Document 28, p. 4. Regardless, Plaintiff asserts that it is covered for the full actual adjusted amount of the loss.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to

---

[4] The Court notes that Plaintiff has been inconsistent in its argument. In Plaintiff's amended complaint, Plaintiff states that the David Raines Road Properties had building coverage limits of $1,628,000. Record Documents 8, ¶ 6. However, in its motion for summary judgment, Plaintiff represents that all buildings are subject to only a $5,000,000 per occurrence limit. Record Document 25-1, p. 13. Although Plaintiff did not advance this argument in its complaint, the Court will consider it because the Court rejects both arguments.

3

interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

# LAW & ANALYSIS

## I. Louisiana Contract Principles

The parties do not dispute that Louisiana law applies to the interpretation of this insurance contract. Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580 (citations omitted). When interpreting an insurance contract, a court is "to ascertain the common intent of the insured and insurer as reflected by the words in the policy." *Peterson v. Schimek*, 98-1712, p. 4 (La. 3/2/99); 729 So. 2d 1024, 1028 (citing La. Civ. Code art. 2045). If the words of an insurance contract are "clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." *Id.* (citing La. Civ. Code art. 2046). "Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. Additionally, each provision of a policy "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 2011-1720, p. 4 (La. App. 4 Cir. 8/22/12); 99 So. 3d 723, 726.

An insurance policy is ambiguous if it is "susceptible to two or more *reasonable* interpretations." *Cadwallader*, 848 So. 2d at 580 (emphasis in original). "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049. The ambiguous provision should "be interpreted as having the meaning that best conforms to the object of the contract." *Id.* art. 2048. When

5

interpreting an ambiguous provision, a court may "interpret it in light of the custom and usages of the industry." *Rainbow USA, Inc. v. Crum & Forster Specialty Ins. Co.*, 711 F. Supp. 2d 655, 663 (E.D. La. 2010) (citing La. Civ. Code art. 2053).

## II. Application

The Court finds that the dispositive point of contention is the type of coverage that this policy provided. Defendant contends that the policy at issue is clearly a scheduled policy. Plaintiff, on the other hand, counters that it did not request scheduled coverage or blanket coverage. Nonetheless, Plaintiff's interpretation of the policy would require the Court to find that the policy at issue provides for blanket coverage.[5]

The terms "scheduled policy" and "blanket policy" are terms of art in the insurance industry. *See Reliance Ins. Co. v. Orleans Par. Sch. Bd.*, 322 F.2d 803, 806 (5th Cir. 1963) (applying Louisiana law); *S. Ins. Co.*, 830 F.3d at 351 (citing *Reliance Ins. Co.*, 322 F.2d at 806). "A scheduled policy is one in which each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to loss affecting such property is determined independently of the other items of property." *Orleans Par. Sch. Bd.*, 99 So. 3d at 728 (internal quotation marks and citations omitted). Typically, in a scheduled policy, the insured submits an SOV, which lists the values of the properties to be insured. The insurer normally establishes premiums based on the values in the SOV and limits its liability to those values listed in the SOV. *See Fair Grounds Corp. v. Travelers Indem. Co. of Ill.*, 99-301, p. 8 (La. App. 5 Cir. 9/28/99); 742 So. 2d 1069, 1074, *writ denied*, 1999-3260 (La. 1/28/00); 753 So. 2d 831 ("Under a

---

[5] For example, Plaintiff argues that the SOV is merely used to calculate premiums and not to limit liability. Further, Plaintiff argues that all properties are subject to only the $5,000,000 per occurrence limit of liability. These are arguments typically found when a party seeks blanket coverage. *See S. Ins. Co. v. Affiliated FM Ins. Co.*, 830 F.3d 337, 351–52 (5th Cir. 2016).

6

scheduled policy only listed risks are insured, and then only for the listed value."). If a loss occurs, "the insurers would only pay the value stated for that item on the file list, even if the item were actually worth more than its listed value." *Id.* at 1072. A blanket policy, on the other hand, "is one in which coverage attaches to, and covers to its full amount, every item of property described in it." *Orleans Par. Sch. Bd.*, 99 So. 3d at 728 (internal quotation marks and citations omitted). In other words, "a blanket policy is a policy which puts an overall 'blanket' limit of insurance on all property owned by the insured." *Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1279 (M.D. Fla. 2019). Louisiana courts "look at the language of an insurance policy as a whole to determine whether it provides for scheduled or blanket coverage." *Orleans Par. Sch. Bd.*, 99 So. 3d at 728 (citation omitted).

After applying Louisiana's contract interpretive principles, the Court holds that this policy, when read as a whole, is clearly and unambiguously a scheduled policy. First, the policy describes the premises by incorporating an SOV on file with the company. In ITEM 1 in the COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS, the "Per Schedule On File With Company Option" is selected. Record Document 27-3. Second, this policy's PRIMARY INSURANCE PROVISIONS ENDORSEMENT makes further references to "Statement of Values . . . on file with the Company" and contains a provision that limits liability to the value listed in the SOV. Record Document 27-4, p. 2. Louisiana courts have held that similar references to an SOV on file coupled with a limit of liability endorsement signal that the insurance contract is a scheduled policy and that the limitation of liability is the value listed by the insured in the SOV. *See Orleans Par. Sch. Bd.*, 99 So. 3d at 728–29; *Fair Grounds*, 742 So. 2d at 1069–74; *see also S. Ins. Co.*, 830 F.3d 337, 351–52 (5th Cir. 2016) (stating that other courts, including Louisiana courts, have held that when an insurance policy has "a scheduled limit of liability endorsement, and the description of the premises

7

is listed as per schedule on file with the company, a scheduled—rather than blanket—policy is created, and the insurer's liability as to that particular property is limited to the value shown on the [SOV].") (citation omitted); *Bahama Bay*, 374 F. Supp. 3d at 1279 (citing *Fair Grounds*, 742 So. 2d at 1072). As a scheduled policy, Defendant's limit of liability is capped at the value Plaintiff listed in the SOV: $407,000. *See Fair Grounds*, 742 So. 2d at 1074.

Ultimately, the Court is unpersuaded by Plaintiff's interpretation of the insurance policy. Plaintiff contends that ITEM 1 of the declaration pertains only to the description of the property and that ITEM 2 addresses limits of liability and makes no reference to the SOV. Record Document 25-1, pp. 11–13. As such, Plaintiff asserts that the insurance contract should read to say that all buildings are subject to only the $5,000,000 primary per occurrence limit of liability, i.e., blanket coverage. *Id.* However, it is clear to the Court that this primary policy provides for a $5,000,000 per occurrence limit with scheduled limits for individual properties as listed in the SOV. Although the declaration could have been clearer by making a mark in ITEM 2 under LIMIT OF INSURANCE PER SCHEDULE, the absence does not create an ambiguity or transform this policy into a blanket policy. *See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 766 (La. 1994) (stating that the fact that a policy could have been clearer "does not mandate the conclusion that the policy was legally ambiguous") (citation omitted). When reading the contract as a whole, it is clear to this Court that the mutual intent of the parties as reflected by the words in the contract was to establish a scheduled policy, which is common in the commercial property context. Furthermore, ITEM 1 on the declaration had already made clear that the schedule was being kept on file with the company. Record Document 25-2, p. 3. Thus, Plaintiff is incorrect in reading the limit of insurance per schedule as non-existent; instead, the LIMIT OF INSURANCE PER SCHEDULE referenced in ITEM 2 is on file with the company per ITEM 1. *Id.* This reading

is further buttressed by the final sentence in the COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS, which states "information required to complete the commercial property coverage part declarations, if not shown above, will be shown on the applicable schedule or on the schedule on file with the company." *Id.* at 7 (alteration to original).

Plaintiff dedicates a substantial portion of its brief to arguing about the application of the "limit of liability" provision found in the PRIMARY INSURANCE PROVISIONS ENDORSEMENT. The relevant part of the provision states the following:

> The premium for this policy is based upon the Statement of Values and/or Application on file with the Company. In the event of a covered loss or damage, the liability for the Company shall be [ ] limited to the least of the following:
>
> a. The actual adjusted amount of loss or damage, less applicable deductibles.
>
> b. The stated value(s) for the location(s) involved, as shown on the latest Statement of Values and/or Application on file with the Company, less applicable deductibles.

Record Document 27-4, p. 2. Plaintiff argues that the Court should disregard this limit of liability provision in the PRIMARY INSURANCE PROVISIONS ENDORSEMENT because it is in the OTHER INSURANCE subsection instead of the Limits of Insurance subsection. Plaintiff avers that this subsection is inapplicable because this dispute does not involve other insurance or a layered insurance program. Record Document 28, p. 3. Defendant contends that the Court should apply the unequivocal language of the provision and limit the liability to the least of the following: the actual adjusted amount of loss or the value "on the latest [SOV]." Record Document 27, pp. 8–9.

Although the placement of the provision in the other insurance subsection instead of the limit of liability subsection has created some ambiguity to the application of the provision in the instant case, the Court disagrees that it should completely disregard it. First, the language is probative of the nature of the underlying policy. Louisiana courts, interpreting a similar policy

9

provision, have held that the language in clause b. of the limit of liability provision is used in scheduled policies and have limited liability to the value listed in the SOV based on this language. *See Fair Grounds*, 742 So. 2d at 1072 (holding that a similar limit of liability clause created a scheduled policy where the limit was the value listed in the SOV). Second, Plaintiff's interpretation of the contract is untenable without the application of this provision. Plaintiff argues for the Court to disregard this provision but cites to no other provision that entitles Plaintiff to the amount it argues it is owed—the actual value of the loss, minus depreciation costs and the deductible. As such, Plaintiff at least implicitly relied on clause a. of the limit of liability provision in concluding that it should be entitled to the full adjusted value of the loss, minus the deductible. Therefore, the Court cannot rely on Plaintiff's strained reading of the contract. Defendant's interpretation harmonizes the contract as a whole and is therefore the proper interpretation. Thus, Defendant appropriately limited its liability to the value listed on the latest SOV because it was less than the actual loss. *See* Record Document 25-10, pp. 2–3.

Overall, Plaintiff's interpretation of the policy negates the importance of maintaining a separate SOV in a complex commercial property policy with over 135 buildings in multiple states. Moreover, "[i]mplicit in [Plaintiff's] argument is of course an admission by [Plaintiff] that the [$407,000] stated value for the [Building] provided by it to [Defendant] was a gross underestimation of its actual replacement cost of over [$1,000,000]." *Fair Grounds*, 742 So. 2d at 1071. In other words, Plaintiff listed the total insured value of the Building as $407,000, but it now seeks to recover as if the value of the Building is over $1,000,000. Plaintiff hired a sophisticated agent and broker to insure its properties. Plaintiff, through its agent and broker, bargained for a scheduled policy and supplied the SOV with the properties listed individually for $407,000. As such, Plaintiff paid the premiums consistent with the values Plaintiff submitted to Defendant. It was up to Plaintiff to

accurately list the value of the property in the SOV. Plaintiff's interpretation of the policy would lead to the absurd result of allowing a sophisticated insured to undervalue the property in an SOV for cheaper premiums and still receive blanket coverage. When reading the contract as a whole, the intent of the parties was clearly to create a scheduled insurance policy. Therefore, the limit of liability is the value listed for the property in the SOV: $407,000.

Although Defendant has not moved for summary judgment, both parties were fully aware of the legal issue to be decided by this Court. This issue has been fully briefed by both parties, and Plaintiff responded to Defendant's opposition brief. The parties do not dispute that Defendant has already paid Plaintiff $407,000. Considering the Court's above finding that Defendant's limit of liability for the Building is $407,000, Plaintiff is not entitled to any further relief. Therefore, granting summary judgment *sua sponte* in favor of Defendant is appropriate. Fed. R. Civ. P. 56(f); *see Atkins v. Salazar*, 677 F.3d 667, 681 (5th Cir. 2011) (affirming district court's grant of summary judgment *sua sponte* without formal notice when legal issue fully briefed).

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Summary Judgment [Record Document 25] is **DENIED**. The Court also **GRANTS** summary judgment for Defendant *sua sponte*. A judgment consistent with this opinion will be issued herewith.

**THUS DONE AND SIGNED** this 21st day of June, 2021.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE